UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA FRITZ, | : | ELECTRONICALLY FILED |
| Plaintiff, | : | No.: 3:24-CV-01105-JKM |
| vs. | : | Judge: Munley |
| WEST PENN TOWNSHIP | : | Civil Action-Law |
| Defendant. | : | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

**AND NOW,** come the Plaintiff, Carla Fritz, by and through her attorneys, The

Hanchulak Law Offices, P.C., and avers as follows:

### I. INTRODUCTION

1. Plaintiff initiates this action to seek redress against West Penn Township

(hereinafter "Defendant"), her former employer, for unlawful discrimination in violation of the

Americans with Disabilities Act (hereinafter ADA), unlawful ADA Retaliation, Fair Labor

Standards Act (FLSA) violations, Breach of Contract, and violations of other applicable laws.

### II. PARTIES

2. Plaintiff is an adult and competent individual residing at 158 West Fell Street,

Summit Hill, PA 18250.

3. Defendant, West Penn Township, is a government unit, a township, located in Schuykill County, Pennsylvania, with offices located at 27 Municipal Road, New Ringgold, PA 17960.

### III. JURISDICTION

4. Defendant is an "employer" within the meaning of the Americans with Disabilities Act, as it engaged in an industry affecting interstate commerce and because it maintained or maintains fifteen (15) or more employees for each working day in each of twenty or more weeks in the current or preceding calendar year.

5. Pursuant to 28 U.S.C. § 1331 this court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6. This court has Supplemental Jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Plaintiff has exhausted her administrative remedies, having received a Notice of Right to Sue from the U.S. Department of Justice, Civil Rights Division on April 11, 2024. (See **Exhibit A** attached).

8. On March 8, 2024, Plaintiff satisfied the six-month notice requirement set forth in 42 Pa. C.S. § 5522. (See **Exhibit B** attached).

### IV. FACTUAL BACKGROUND

9. Plaintiff was employed by West Penn Township as support staff for the Police Department from September 2021 until her employment was terminated on October 7, 2023.

10. Beginning in 2022, Glenn Hummel, a township supervisor, who was a liaison to the Police Department where Plaintiff worked, constantly harassed Plaintiff.

11. The harassment became so severe that in August of 2023, Plaintiff sought medical care.

12. On August 9, 2023, Plaintiff's physician diagnosed her with severe anxiety related to work related mental stress.

13. On or about August 9, 2023, Plaintiff requested leave under the Family Medical Leave Act.

14. At or about the same date, Plaintiff asserted her rights under the Pennsylvania Workers' Compensation Act.

15. Shortly thereafter, Plaintiff's FMLA leave request was denied.

16. In response to the denial, Plaintiff reported the employer to the United States Department of Labor related to the FMLA denial.

17. Shortly after Plaintiff's Department of Labor complaint the employer reversed course and approved Plaintiff's FMLA leave request.

18. On August 22, 2023, Defendant denied Complainant's Workers' Compensation claim.

19. Plaintiff took FMLA from August 10, 2023, to October 7, 2023.

20. Based upon Plaintiff's physicians note of August 9, 2023, Defendant cut Plaintiff's hours.

21. Plaintiff did not request a reduction in hours, the reduction in hours was retaliatory.

22. In retaliation for Plaintiff exercising her disability related rights, Defendant undertook a campaign to force Plaintiff out of her job, which consisted of increased workplace

harassment, threats that her employment would be terminated, a cut in hours, and refusal to pay for hours worked.

23. The threats to Plaintiff's employment escalated dramatically once the Defendant was advised of Plaintiff's disability.

24. Finally, on October 7, 2023, Defendant terminated Plaintiff's employment, citing budgetary reasons.

**COUNT I**
**DISABILITY DISCRIMINATION**

25. Paragraphs 1 through 24 above are incorporated herein by reference as if the same were set fourth fully herein and at length.

26. Plaintiff is a "qualified individual with a disability" as the term is defined in the ADA, because she has, and has had, at all-times relevant hereto, a physical or mental impairment that substantially limits one or more of her major life activities, or because she has a record of such impairment.

27. Particularly, Plaintiff's anxiety affects many major life activities including sleeping, working, and thinking.

28. Despite her condition Plaintiff was able to perform the essential functions of her job.

29. Additionally, Plaintiff was perceived or regarded by the Defendant as having an impairment substantially limiting one or more of her major life activities.

30. The foregoing conduct by the Defendant constitutes unlawful discrimination against Plaintiff based on her disability or perceived disability.

31. As a result of the Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

Wherefore, Complainant seeks damages as set forth in the ad damnum clause below.

## COUNT II
## ADA RETALIATION

32. Paragraphs 1 through 30 above are incorporated herein by reference as if the same were set fourth fully herein and at length.

33. When Plaintiff asserted her disability related rights under ADA she was engaged in protected activity.

34. When the Defendant cut Plaintiff's hours it engaged in adverse employment action.

35. When the Defendant harassed Plaintiff and tried to force her to quit it engaged in adverse employment action.

36. When the Defendant terminated Plaintiff's employment on October 7, 2023, it engaged in adverse employment action.

37. All of the aforesaid adverse employment action was contemporaneous with or in close temporal proximity to Defendant learning of Plaintiff's condition and Plaintiff's protected activity, sufficient to raise an inference establishing a causal connection between the employee's protected activity and employer's adverse action.

38. The Defendant does not have a legitimate nondiscriminatory reason for its adverse employment action.

Wherefore, Plaintiff seeks damages as set forth in the ad damnum clause below.

## COUNT III
## DISABILITY DISCRIMINATION
## FAILURE TO ACCOMMODATE

39.     Paragraphs 1 through 38 above are incorporated herein by reference as if the same were set fourth fully herein and at length.

40.     Plaintiff's severe anxiety is a disability within the meaning of the ADA.

41.     On August 9, 2023, when the Defendant was advised of Plaintiff's disability and request for leave, Defendant had a duty under the ADA to engage in an interactive process with Plaintiff and her physician to provide leave as an ADA accommodation, apart from the employer's responsibilities under the FMLA.

42.     The Defendant did not make a good faith effort to assist Plaintiff.

43.     The request for leave as an accommodation was reasonable.

44.     The Defendant's failure to accommodate violated the ADA.

Wherefore, Plaintiff seeks damages as set forth in the ad damnum clause below.

## COUNT IV
## FAIR LABOR STANDARDS ACT VIOLATIONS

45.     Paragraphs 1 through 44 above are incorporated herein by reference as if the same were set fourth fully herein and at length.

46.     At all relevant times Defendant was and continues to be an employer within the meaning of the FLSA.

47.     Defendant failed to pay Plaintiff for all hours worked and failed to pay overtime compensation at a rate of not less than one and one-half times the rate at which Plaintiff was employed, for work performed beyond 40-hours in a given week, in violation of 29 U.S.C. §§ 206 and 207.

48.     In the period of September 2021 through October 7, 2023, Plaintiff's work shift was 8:00 AM to 5:00 PM with a one-hour uncompensated lunch.

49.     During the above period Plaintiff never took her lunch because she was unable to do so.

50.     During the period of September 2021 through October 7, 2023, Plaintiff was not compensated for 516 hours, having worked through her uncompensated lunch each day.

51.     In September of 2021, the Defendant asked Plaintiff to clean and paint the Defendant's offices in addition to her support staff position.

52.     Because Plaintiff was not able to do the cleaning and painting during her regular work hours, Plaintiff did the work in the evening hours and on days off.

53.     Plaintiff was told by Supervisor Hummel to keep the time and use it as future comp time.

54.     In September of 2021, Plaintiff performed 40 hours of uncompensated work cleaning and painting.

55.     Plaintiff performed additional cleaning and painting in January and February of 2022, under the same arrangement.

56.     In January and February of 2022, Plaintiff worked an additional 40 hours of uncompensated time.

57.     When Plaintiff's employment was terminated in October of 2023, she asked to be compensated for the 80 hours of uncompensated painting and cleaning, only to be told to "prove it."

58.     In total, Plaintiff was not compensated for 596 hours.

59.     In addition to the 596 uncompensated hours, those hours resulted in Plaintiff working in excess of 40 hours in a given week.

60.     Plaintiff was a full time 40 hour per week employee, however when you add in the one uncompensated lunch hour per day, Plaintiff worked 45 hours per week September 2021, through October 7, 2023, exclusive of the cleaning hours.

61.     Based upon the uncompensated lunches, Plaintiff was not paid 535 hours of overtime pay. Plaintiff's regular rated of pay was $18.00 per hour.

62.     In September of 2021, Plaintiff was not compensated for 40 additional overtime hours.

63.     In January and February of 2022, Plaintiff was not compensated for 40 additional overtime hours.

64.     The actions of the Defendant detailed above were willful.

65.     The Defendant knew or should have known that failure to compensate employees for lunches they worked through violated the FLSA.

66.     The Defendant knew or should have known that failure to compensate employees at all for work they performed violated the FLSA.

67.     The Defendant knew or should have known that their actions as set forth above would result in employees exceeding 40 hours in a given week and not being compensated with overtime pay.

68.     Under the FLSA the employees are entitled to recover from Defendants their unpaid overtime compensation, minimum wage for uncompensated time, an additional equal amount as liquidated damages, reasonable attorneys' fees and costs of the action pursuant to 29

U.S.C. § 216(b).

69. It is believed and therefore averred that the Defendants did not keep accurate records which recorded Plaintiffs:

   a. Full name and social security number;

   b. Full and complete address;

   c. Sex and occupation;

   d. Time and day of the week when her workweek began and ended;

   e. Hours worked each day;

   f. Total hours worked each workweek;

   g. Basis on which plaintiff was being paid (e.g., hourly, weekly, piecework);

   h. Regular hourly rate of pay;

   i. Total daily or weekly straight-time earnings;

   j. Total overtime earnings for the workweek;

   k. Additions to or deductions from her wages;

   l. Total wages paid each pay period;

   m. Date of payment and the pay period covered by the payment, and

   n. Did not accurately record hours worked in a given day. See 29 C.F.R. Part 516.

WHEREFORE, Plaintiff seeks damages as set forth in the ad damnum clause below.

## COUNT V
## BREACH OF CONTRACT

70. Paragraphs 1 through 69 above are incorporated herein by reference as if the

same were set fourth fully herein and at length.

71. As stated above, Defendant promised to employ Plaintiff at a rate of $18.00 per hour, for all hours worked, except cleaning hours which would be paid at a rate of $15.00 per hour.

72. Defendant failed to pay Plaintiff for all hours worked and failed to pay overtime compensation at a rate of not less than one and one-half times the rate at which Plaintiff was employed, for work performed beyond 40-hours in a given week.

73. In the period of September 2021 through October 7, 2023, Plaintiff's work shift was 8:00 AM to 5:00 PM with a one-hour uncompensated lunch.

74. During the above period Plaintiff never took her lunch because she was unable to do so.

75. During the period of September 2021 through October 7, 2023, Plaintiff was not compensated for 516 hours, having worked through her uncompensated lunch each day.

76. In September of 2021, the Defendant asked Plaintiff to clean and paint the Defendant's offices in addition to her support staff position and promised to pay her for her time at the rates stated above.

77. Because Plaintiff was not able to do the cleaning and painting during her regular work hours, Plaintiff did the work in the evening hours and on days off.

78. Plaintiff was not paid for the work as promised but was told by Supervisor Hummel to keep the time and use it as future comp time.

79. In September of 2021, Plaintiff performed 40 hours of uncompensated work cleaning and painting.

80. Plaintiff performed additional cleaning and painting in January and February of 2022, under the same arrangement.

81. In January and February of 2022, Plaintiff worked an additional 40 hours of uncompensated time.

82. When Plaintiff's employment was terminated in October of 2023, she asked to be compensated for the 80 hours of uncompensated painting and cleaning, only to be told to "prove it."

83. In total, Plaintiff was not compensated for 596 hours.

84. In addition to the 596 uncompensated hours, those hours resulted in Plaintiff working in excess of 40 hours in a given week.

85. Plaintiff was a full time 40 hour per week employee, however when you add in the one uncompensated lunch hour per day, Plaintiff worked 45 hours per week September 2021, through October 7, 2023, exclusive of the cleaning hours.

86. Based upon the uncompensated lunches, Plaintiff was not paid 535 hours of overtime pay. Plaintiff's regular rated of pay was $18.00 per hour.

87. In September of 2021, Plaintiff was not compensated for 40 additional overtime hours.

88. In January and February of 2022, Plaintiff was not compensated for 40 additional overtime hours.

89. The actions of the Defendant detailed above were in breach of the oral contract between Plaintiff and the township, the terms of which were that Plaintiff would be paid for the time she worked at $18.00 per hour for all work except cleaning, which would be compensated

at $15.00 per hour.

90.     Plaintiff incurred damages when she was not paid for her time as promised.

WHEREFORE, Plaintiff seeks damages as set forth in the ad damnum clause below.

### AD DAMNUM CLAUSE/PRAYER FOR RELIEF

Wherefore, Plaintiff prays that judgment be entered in her favor as follows:

a.     The Respondent be permanently enjoined form permitting ADA discrimination against the Complainant or others;

b.     The Defendant be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting ADA discrimination and be ordered to promulgate an effective policy against such illegal practices;

c.     The Defendant is to be permanently enjoined from retaliatory action against Plaintiff and employees who support Plaintiff's claims or those exercising their own rights under State and/or Federal law;

d.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make her whole for any and all pay and benefits she would have received had it not been for Defendant's unlawful actions, including, but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, impact on social security benefits and seniority;

e.     Defendant is to compensate Plaintiff for any and all emotional pain and suffering she has occasioned as a result of the Defendant's conduct;

f.     Plaintiff is to be awarded actual damages caused to her by Defendant's actions;

g.    Plaintiff is to be awarded liquidated damages and/or punitive damages as permitted by applicable law, in an amount believed by the court or trier of fact to be appropriate to punish the Defendant for it willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

h.    Plaintiff is to be accorded any and all other equitable and legal relief, as the Court deems just, proper, and appropriate;

i.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable Federal law;

j.    Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action to ensure Defendant does not engage in further, or ceases engaging in, illegal retaliation against Plaintiff or other witnesses to this action;

k.    Plaintiff is entitled to recover from Defendant, her unpaid overtime compensation, an additional amount equal as liquidated damages, reasonable attorneys' fees, and cost and disbursements of the action, pursuant to 29 U.S.C. § 216(b).

l.    Under the FLSA Plaintiff is entitled to recover all unpaid hours.

m.    Plaintiff is entitled to recover all unpaid hours, including overtime, as damages under her breach of contract claim.

Respectfully submitted,
THE HANCHULAK LAW OFFICES, P.C.


By:   s/Gerald J. Hanchulak

Gerald J. Hanchulak, Esq.

Attorney ID PA 56320

Attorney for Plaintiff

345 Wyoming Avenue, Suite 205

Scranton, PA 18503

(570) 319-6642

ghanchulak@hanchulaklaw.com